UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK GALLAGHER,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>Defendants. | Case No. 23-cv-03579-SI<br><br>**ORDER VACATING NOVEMBER 17 HEARING AND CASE MANAGEMENT CONFERENCE AND GRANTING CITY'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 26 |

The City and County of San Francisco's motion to dismiss the first amended complaint is scheduled for a hearing on November 17, 2023. An initial case management conference is also scheduled for that day. Pursuant to Civil Local Rule 7-1(b), the Court determines that the City's motion is appropriate for resolution without oral argument and VACATES the hearing. The Court will grant plaintiff leave to amend, and the amended complaint shall be filed by **November 9, 2023**. The Court also VACATES the November 17 initial case management conference. The Court will hold a case management conference once the pleadings are settled.

## BACKGROUND

### I.   Factual Background

Plaintiff Patrick Gallagher is a "veteran in the construction industry" with over 45 years of experience. First Amended Compl. ("FAC") ¶ 1. In 2018, Gallagher purchased a single family home in San Francisco with the intention of renovating and selling it. *Id*. ¶¶ 1, 28. Gallagher alleges that once he began renovations, he became a victim of a "pay to play fraud" perpetrated by San Francisco City building inspectors, planners, and the City, and that "after he refused to participate" in the scheme and spoke to the FBI, the City and its employees retaliated against him by issuing

"frivolous notices of violation" and revoking numerous permits for the property. *Id.* ¶ 4. Gallagher claims that these retaliatory actions have caused the property to fall out of escrow several times and that the City's actions have amounted to an "unjustified taking." Gallagher has sued the City and County of San Francisco, ("the City"), four current and former building inspectors with the San Francisco Department of Building Inspection ("SFDBI") (Bernard Curran, Joe Duffy, Kevin Birmingham, and Mauricio Hernandez), two employees of the San Francisco Planning Department (William Hughen and Natalia Kwaitkowska), and a structural engineer who had been a former City employee (Rodrigo Santos).

Gallagher alleges that Building Inspector Bernard Curran told him that he needed to obtain a permit from the City in order to begin renovations, and that he needed to hire structural engineer Rodrigo Santos in order to obtain the permit. *Id.* ¶ 31. Even though Gallagher believed a structural engineer was not required for the renovations, Gallagher hired Santos. *Id.* Gallagher alleges that Santos continually delayed the project, and that after Gallagher had paid Santos $13,000 "for work that was essentially useless," he fired Santos and hired a different structural engineer who completed the work in two weeks and at a fraction of the cost charged by Santos. *Id.* ¶ 32. Gallagher received the permit from the City in June 2019, and he began the main renovation process. *Id.* ¶ 33. In August 2020, the project was complete and Curran issued Gallagher a signed certificate of completion. *Id.* ¶ 34. Around May 2021, Gallagher entered into an agreement to sell the property and it went into escrow. *Id.* ¶ 35.

At about the same time, the FBI contacted Gallagher about an investigation the agency was conducting into Curran and Santos about an illegal "pay to play" scheme. *Id.* ¶ 37.[1] Curran was forced to resign from SFDBI as a result of the investigation. *Id.* ¶ 36. Building Inspectors Duffy, Birmingham, and Hernandez, and City Planners Hughen and Kwaitkowska, were "close associates" of Curran and Santos, and they "became aware and/or were under the belief" that Gallagher had spoken to the FBI about Curran and Santos. *Id.* ¶ 38. Gallagher claims that SFDBI began retaliating

---

[1] In 2021, following an investigation by the FBI, Curran and Santos were federally indicted, and in 2023, both men pled guilty. Curran pled guilty to accepting illegal gratuities in violation of 18 U.S.C. § 666 and Santos pled guilty to honest services wire fraud in violation of 18 U.S.C. §§ 1343, 1346. This Court presided over the related criminal cases.

against him when, approximately four days before escrow was scheduled to close on the property, SFDBI issued a notice of violation for an expired permit and an illegal downstairs unit. *Id.* ¶ 39. SFDBI "falsely claimed that the certificate of completion that Curran signed never got filed correctly and was now void" and that the entire property would need to be reinspected and approved. *Id.* Escrow did not close and the sale of the property fell through. *Id.*

Building Inspectors Birmingham and Hernandez reinspected the property and issued a notice of violation about windows on the second floor that "had already been approved twice." *Id*. ¶ 40. They also told Gallagher that he needed to submit an application for an additional dwelling unit and revise the plans for the property to reflect more accurately how the stairs were built. *Id*. During this inspection, Hernandez "sneered at Plaintiff, telling him, 'we know who you've been talking to.'" *Id.* Gallagher "had no choice but to comply with SFDBI's demands related to these unfound[ed] violations and submitted his applications and revised plans accordingly." *Id.* ¶ 41. Birmingham then rejected the application related to the second floor windows, now demanding that the windows needed to be closed off completely. *Id.* ¶ 42.

Gallagher contacted the San Francisco Board of Supervisors for help, and the Board facilitated a meeting between Gallagher and SFDBI. *Id.* ¶ 43. At that meeting, Gallagher "presented evidence showing that the subject property had already received a certificate of completion and that the recent demands of SFDBI were unreasonable and excessive." *Id.* ¶ 44. "SFDBI dismissed Plaintiff's concerns and ignored the validity of his claims, refusing to approve his plans or his applications." *Id.* During the meeting, Duffy also "expressed that he had no doubt that Plaintiff had spoken to the FBI concerning his dealings with Curran and Santos." *Id.* Gallagher had "no choice but to comply with SFDBI's demands" and he closed off the second floor windows, spending $30,000 for the additional work. *Id.* ¶ 45.

In October 2021, Senior Planner Hughen was put in charge of overseeing Gallagher's application for an additional dwelling unit. *Id.* ¶ 46. Hughen, and then Principal Planner Kwaitkowska, "egregiously delayed the application for months on end, forcing Plaintiff to jump over more arbitrary hurdles." *Id.* While Gallagher's application for an additional dwelling unit was pending, Hughen "placed yet another baseless roadblock" in front of Gallagher: a citation that

3

the driveway on the property was out of code and could not be used for off-street parking. *Id.* ¶ 47. Gallagher claims that the driveway "had already been approved," and that not being able to use the driveway for parking "would place a significant limitation on the property and greatly affect its overall value." *Id.* Gallagher contacted the City Attorney's Office and provided Hughen with the applicable laws and ordinances showing that the driveway was code compliant. *Id.* Hughen "dismissed Plaintiff's pleas and demanded that he now apply for a variance." *Id.* Gallagher had "no choice" but to apply for a variance. His applications for the variance and the additional dwelling unit were approved in May 2022, and Gallagher received the necessary permits. *Id.* ¶ 48.

Around this time, Gallagher entered into another agreement to sell the property and entered into escrow. *Id.* ¶ 49. Gallagher had not received a new certificate of completion, which negatively affected the sale price, but Gallagher needed to sell the property and was "willing to do so at a discount." *Id.*

In July of 2022, while the property was still in escrow, the City informed Gallagher that his permits for the additional dwelling unit and the driveway were being revoked. *Id.* ¶ 50. The City "falsely claimed that the City's Planning Department had mistakenly provided him these permits and that he needed approval from SFDBI as it was within their purview." *Id.* Gallagher was told he needed to submit new applications and new revised plans, and that he needed to go through the entire process again. *Id.* The sale of the property fell through a second time. *Id.*

Approximately six months later in January 2023, "after another long, arbitrary, and arduous process," the City issued new permits for the additional dwelling unit and the driveway. *Id.* ¶ 51. Additional inspections were required in order to obtain a final certificate of completion, and those inspections "have led to new, unfounded, and vindictive violations concerning, among other things, the legality of the windows located on the first floor of the property.' *Id.* ¶ 52.

In February 2023, Gallagher entered into another agreement to sell the property, again at a discount because he lacked a certificate of completion. *Id.* ¶ 53. "Due to the numerous abatements and notices of violation that remain on the property, it has been in escrow for the past three (3) months." *Id.* Gallagher claims that the City has intentionally and vindictively drawn out the renovation process, and that as a result, he has lost a significant amount of money, suffered severe

4

1 emotional distress, and irreparable harm to his reputation. *Id*. ¶ 54.

2     The first amended complaint alleges seven causes of action against all defendants, except the second cause of action which is alleged only against the City: (1) slander of title; (2) inverse condemnation; (3) intentional interference with prospective economic relations; (4) violation of civil rights, 42 U.S.C. § 1983; (5) intentional infliction of emotional distress; (6) negligence; and (7) declaratory relief.

## II.   Procedural Background

    This case was originally filed in San Francisco Superior Court in March 2023. On July 17, 2023, the City removed this case from state court on the basis of federal question jurisdiction, namely the addition of the fourth cause of action in the first amended complaint alleging a cause of action under 42 U.S.C. § 1983 for violation of Gallagher's First and Fourteenth Amendment rights. On July 26, the City filed a motion to dismiss the first amended complaint. Five of the individual defendants (Duffy, Birmingham, Hernandez, Hughen and Kwaitkowska) were served sometime after the City was served, and their responses to the first amended complaint are due November 17, 2023. As of the filing date of this order, neither Curran nor Santos have been served.

**DISCUSSION**

    The City moves to dismiss all causes of action against it. The City raises numerous challenges to the state law claims, and contends that the FAC fails to allege a basis for municipal liability under 42 U.S.C. § 1983. The Court will focus on the § 1983 cause of action because it is the basis for this Court's jurisdiction. The Court does not address the state law claims at this time because if Gallagher is not able to state a federal claim, the Court will decline supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(c)(3).

    Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Board of Cty. Comm'rs. of Bryan Cty.*

5

1  *v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d
2  1522, 1534 (9th Cir. 1995). To impose municipal liability under § 1983 for a violation of
3  constitutional rights resulting from governmental inaction or omission, a plaintiff must show:
4  "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the
5  municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's
6  constitutional rights; and (4) that the policy is the moving force behind the constitutional violation."
7  *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of
8  Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted). To establish an
9  official policy that would give rise to *Monell* liability, a plaintiff must allege facts to support one of
10 the following to survive dismissal of its claim: (1) an unconstitutional custom or policy behind the
11 violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have
12 a needed policy; or (3) a final policy maker's involvement in, or ratification of, the conduct
13 underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-50
14 (9th Cir. 2010) (synthesizing authorities), *overruled on other grounds by Castro v. Cty. of Los
15 Angeles*, 833 F.3d 1060 (9th Cir. 2016).

16 Under the fourth cause of action, the FAC alleges that Gallagher "had discussions with the
17 FBI concerning their criminal investigation into the corruptive practices of Curran, Santos and the
18 Defendants," that Gallagher "refused to participate in the ongoing scheme that was being perpetrated
19 against him by Curran, Santos and the Defendants, including without limitation, firing Santos as the
20 structural engineer," and that "Defendants were aware and/or were under the belief that Plaintiff had
21 discussions with the FBI and were aware and/or were under the belief that he refused to participate
22 in the ongoing scheme." FAC ¶¶ 88-90. The FAC alleges that "defendants" acted under color of
23 local ordinance and law by using their authority to retaliate against him in violation of his First and
24 Fourteenth Amendment rights by "issuing and refusing to release frivolous code enforcement liens,
25 issuing and refusing to release notices of violation, issuing and refusing to release abatement orders,
26 revoking permits, revoking a certificate of completion, and making disparaging statements related
27 to the subject property." *Id*. ¶ 91. The FAC alleges that "defendants intentionally targeted the
28 subject property because of Plaintiff's property interests and rights" and that "defendants' actions

1  were in direct response to and meant to cause the deprivation of Plaintiff's exercise of his right of
2  freedom of speech," and that Gallagher's "statements concern[ed] matters of public concern." *Id.*
3  ¶¶ 92-94.

4  The City argues that these allegations are insufficient because Gallagher has not alleged any
5  facts in support of a claim that the City had a custom or policy of retaliating against developers who
6  spoke to the FBI about corrupt inspectors. In response, Gallagher argues that Paragraph 5 of the
7  FAC alleges a "pattern of retaliatory conduct" based on its allegation that "a City Planning
8  Commissioner, who also owned an investment property in San Francisco, alleged that he was
9  retaliated against for speaking out against the City's pay-to-play scheme." *Id.* ¶ 5. Gallagher also
10 argues that the City is liable under the theory that Duffy, the Chief Building Inspector at SFDBI, is
11 a final policy maker who was involved in and/or ratified the unconstitutional retaliation.

12 The Court agrees with the City that the FAC's allegations do not state a basis for *Monell*
13 liability. As an initial matter, it is unclear from the FAC if Gallagher is alleging that anyone beyond
14 Curran and Santos was involved in corruption; the FAC often alleges that "defendants" have done
15 something, without specifying which defendants or whether "defendants" includes the City.
16 Although Paragraph 5 of the FAC alleges retaliatory conduct against a City Planning Commissioner,
17 the FAC does not allege details about that alleged retaliation, such as who at the City was involved.
18 Further, proof of random acts or isolated incidents of unconstitutional action by a non-policymaking
19 employee is insufficient to establish the existence of a municipal policy or custom. *See Rivera v.*
20 *County of Los Angeles*, 745 F.3d 384, 398 (9th Cir. 2014); *McDade v. West*, 223 F. 3d 1135, 1142
21 (9th Cir. 2000); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Thompson v. City of Los Angeles*,
22 885 F.2d 1439, 1444 (9th Cir. 1989). *Gant v. County of Los Angeles*, 772 F.3d 608, 618 (9th Cir.
23 2014) (liability may not be predicated on isolated or sporadic incidents; "it must be founded on
24 practices of sufficient duration, frequency and consistency that the conduct has become a traditional
25 method of carrying out policy"); *Bauer v. City of Pleasanton*, 3:19-cv-04593-LB, 2020 WL
26 1478328, at *5 (N.D. Cal. Mar. 26, 2020) ("two prior incidents . . . do not show a persistent and
27 widespread custom" (internal quotation marks omitted). Thus, if Gallagher seeks to hold the City
28 liable, he must allege more facts to show the existence of a policy or custom.

To the extent Gallagher claims that the City is liable based upon Duffy's actions, Gallagher must be able to allege that Duffy was in fact a final policy maker and his involvement in or ratification of the alleged unconstitutional retaliation.  The FAC does not allege that Duffy is a final policy maker, and instead only alleges that he is the Chief Building Inspector, and the only allegation about Duffy relates to his statement at the meeting between SFDBI and Gallagher that Duffy "had no doubt" that Gallagher had talked to the FBI.  This allegation could be indicative of retaliation, but it is the only allegation about Duffy in the FAC.  Without more, there is no basis for municipal liability based upon that single allegation.  In addition, "[t]o show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it."  *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (citations and internal quotation marks omitted).  "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

Because the Court agrees that Gallagher has failed to state a *Monell* claim, the Court GRANTS the motion to dismiss and GRANTS Gallagher leave to amend.  The second amended complaint shall be filed no later than **November 9, 2023.**

**IT IS SO ORDERED**.

Dated: October  30, 2023

SUSAN ILLSTON
United States District Judge